**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CR. NO. 3:25-CR-727-JFA** |
| | ) | |
| v. | ) | **SENTENCING MEMORANDUM AND** |
| | ) | **VARIANCE MOTION** |
| **SCOTT ROBERT TARDY,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**INTRODUCTION**

When people talk about "hidden" mental health issues, they usually mean conditions or struggles that don't show outward signs or that someone intentionally hides because of stigma, fear, or lack of awareness. These can affect anyone, regardless of how they appear on the surface. Living with hidden mental health conditions, those that others might not easily see or understand, can be incredibly challenging. It often means carrying an invisible weight while trying to appear "fine" on the outside. Invisible doesn't mean insignificant. Conditions like anxiety, depression, bipolar disorder, and posttraumatic stress disorder (PTSD), can deeply affect one's daily life even if others can't see them.

Scott Tardy stands before this court, not as a man defined by his conviction, but as a son, a brother, and a former officer whose entire career demonstrates his value to society. He acknowledges the gravity of this process and the seriousness with which the court must view these offenses. Yet he humbly asks this court to also see the broader picture of a life lived in service and honor.

Sentencing is the most challenging task a judge performs. It has often been described as an art. Each sentence is a unique portrait—a personal rendering of law, discretion, and truth. Judges across the country have acknowledged this difficulty, reflecting on the weight of their task. As one judge observed, "All of my judicial life I have wished for precision in the art of sentencing, and it

1

eludes me." *United States v. Miller*, 361 F. Supp. 825, 827 (W.D.N.C. 1973). That reminder is a humbling one: no sentence is ever the product of perfect science, but of careful judgment applied to an imperfect world. In every case, the court must balance a complex array of considerations: the seriousness of the offense, the history and character of the defendant, the purposes of punishment, deterrence, rehabilitation, and the protection of the public. No two portraits are the same, because no two individuals are the same. The guidelines may provide a frame, but they cannot dictate the shading, the texture, or the human reality that the court must confront.

In Tardy's case, the hope is that his portrait will accurately capture and reflect not only the statutory factors, but also the human truth of who he is. That picture must go beyond the cold calculus of numbers, enhancements, and guideline ranges. It must take into account his life, his struggles, his potential, and his worth as a person. Sentencing, in this sense, is not a mechanical exercise but a canvas where law and humanity meet. Each judgment is a brushstroke that seeks to balance just punishment with proportionality, deterrence with fairness, and accountability with equity. The art lies in seeing the whole person and ensuring that the sentence imposed reflects not only the offense but also the individual who stands before the court. Only then does the portrait rendered becomes honest, fair, and enduring. Counsel wishes that she could offer an adequate explanation to the court, and especially to the victims, as to how and why this offense occurred, but no clear or easy explanation is to be had.

## LEGAL STANDARDS

"As a matter of administration and to secure nationwide consistency," correctly calculating the sentencing Guidelines range is the starting point of the federal sentencing process. *Gall v. United States*, 552 U.S. 38, 50 (2007). However, the Guidelines range is "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Guidelines are not mandatory, *Gall*, 552 U.S. at 59,

and *the Court should not "presume that the Guidelines range is reasonable,"* *id.* at 50 (emphasis added). *See also Rita v. United States*, 551 U.S. 338, 351 (2007) (noting that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). Instead, the Court must "consider all the § 3553(a) factors" and "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81,113 (1996). Such consideration is necessary for the court to fulfill its "overarching duty under § 3553(a) 'to impose a sentence sufficient, but not greater than necessary[]' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Pepper v. United States*, 562 U.S. 476, 491 (2011).

## ANALYSIS

I.   **Tardy's History and Characteristics**

   A.   **Childhood Trauma**

Tardy experienced profound trauma his whole life, but never had the kind of support needed to process it. He was born on July 12, 1993, in Derby, Connecticut. His parents divorced when he was very young. After the divorce, Tardy's father had he and his younger brother every weekend, but that contact dwindled and eventually he stopped responding to their phone calls and abandoned his children when Tardy was about 6 years old. Tardy has dealt with feelings of abandonment and resentment since then and as a child always wondered what he did wrong. After 25 years with no contact, in October of 2024, Tardy found his father on Facebook, where he was living in Florida. He reached out to his father and asked if he could drive to Florida to have lunch with him, but his father replied that he was too busy. This triggered all the feelings of abandonment Tardy experienced as a child.

Tardy was raised by his mother and stepfather, who treated he and his brother well. At the age of 7, Tardy experienced something that no child should ever experience. He was raped by a male neighbor. He did not tell anyone due to the shame. This abuse had astronomical effects on his already fragile mental health. He never received counseling as a child because he suffered in silence. This same neighbor also targeted Tardy's little brother and Tardy vowed to protect him. The perpetrator is now incarcerated in the Connecticut Department of Corrections on unrelated assault charges. Tardy's brother Christopher turned to drugs and alcohol at 14 years old to deal with his childhood trauma and also suffers from mental illness. After many years of addiction, Christopher now resides in a sober living facility.

### B. Adult Trauma, Military Service and Employment

Tardy enlisted in the United States Marine Corp in August of 2012. The highest rank he held was E-3 Lance Corporal and in October of 2017, he was honorably discharged. Tardy enjoyed his military experience and is grateful for the opportunity to serve his country.

When he left the Marines, Tardy went to work at the Connecticut Department of Corrections, where he served the Department with honor and integrity, dedicating himself to the safety and security of the profession. His work record was outstanding, and he received many commendations. Tardy always went to work prepared for the worst, but with a smile on his face. He cultivated respect from his peers, the public and even from the inmates. While working for the Department of Corrections, Tardy experienced harassment and was the victim of assault. He has large scars that are visible today from inmates' bite marks. During COVID, he also worked as a Hospital Security Officer. While working at the hospital one night, a young woman was dumped in the Emergency Room covered in blood from having her throat slashed – a victim of domestic violence. Only when she bled out and died, did he realize that she was a co-worker at the prison.

After seeing all this, he was told to go to the ER waiting room, as her family had just entered and the situation became tense. He had to put aside his own vison of what he had just seen and do his job of maintaining security and control for everyone involved afterwards, including her family. While working security at the hospital, he was assaulted numerous times.

During this time, in 2017, Tardy experienced another loss; this time the suicide of his girlfriend, whom he had known since high school. He still grieves daily and struggles to understand why she killed herself. Then, in October of 2024, one of his best friends and co-workers retired after over 20 years on the job. Two days later, he committed suicide. As is the case with most suicides, his death came out of the blue. This triggered Tardy to experience the suicide and loss of his girlfriend anew. The Department of Corrections sent in a therapy dog for the employees for one day, but then never followed up with counseling for the employees. Dealing with the aftermath of suicides is tough, but during his employment at the prison, he never failed to respond to Code Purples and cut down and provide aid to inmates who had hung themselves.

C.  **Mental and Emotional Health**

None of the above traumas were ever addressed, and for years Tardy internalized everything and told himself "to keep going."  There is a very real stigma surrounding mental illness, especially amongst first responders where they are often told to "get over it, you'll be fine. Be a man." The pressure that built up inside of him found relief behind the anonymity of a computer, where he took out his rage and went to dark places.  Tardy will never understand why the target of his rage was directed towards two people he cared about very much. He is not making excuses.

Defense counsel subpoenaed all of the defendant's mental health records and found that he has been diagnosed with PTSD, major depressive disorder, bipolar II disorder and generalized

anxiety disorder. Tardy has been prescribed Lamotrigine (50 mg), Seroquel (50 mg), Sertraline (100 mg) and Propanol (10 mg) for treatment and has been receiving counseling at several mental health centers while under pretrial supervision. He completed a 24-day inpatient program at Clearbrook Treatment Center in Baldwinsville, MA on August 11, 2024. He receives private therapy with Dr. Kristin Rice through Talkspace Therapy once a month, Dr. Bart Wichowski for law enforcement centered therapy once a week, and Dr. Shawn Ellis for a Christian based therapy session once a week. Additionally, he participated in an Intensive Outpatient Treatment at Waterview Behavioral Health in Wallingford, CT, which consisted of 3-hour sessions three days a week.

Tardy is remorseful for his conduct and has received the necessary treatment to ensure that nothing like this happens again. See letters from defendant attached as *Exhibit 1*. He also has an excellent support system, as evidenced by the numerous character letters sent on his behalf. See *Exhibit 2*.

### D.    Educational, Vocational and Special Skills

Tardy graduated from Seymour High School in Seymour, CT on June 15, 2011. He then enlisted in the United States Marine Corp from August 2012 through October 2017, where he obtained a forklift certification. The highest rank he held was E-3, Lance Corporal, and he was honorably discharged. Tardy receives 10% disability from the Veterans Affair due to service-related tinnitus.

## II.    The Nature and Circumstances of the Offense

The offense involved Tardy being charged with cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(A), (B) (Count 1), False Statements to a Federal Agent, in violation of 18, U.S.C. § 1001(a)(2) (Count 2) and Obstruction of Justice, in violation of 18 U.S.C. § 1519 (Count 3). The defendant acknowledges that these are all serious offenses.

**III.    Sentencing Disparity**

According to the U.S. Sentencing Commission's JSIN database, during the last few fiscal years (FY2020 – 2024), the average length of imprisonment imposed for Tardy's offense was 46 months and the median sentence was 47 months.

## CONCLUSION

Based on all the reasons discussed herein and any additional information placed on the record during the sentencing hearing in this matter, Mr. Tardy respectfully requests that this court grant a downward variance in his case.

Respectfully submitted,

s/Katherine E. Evatt
Katherine E. Evatt, Fed. ID No. 7044
Assistant Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, South Carolina, 29201
T: 803-765-5078
F: 803-765-5084
Email:  Kathy_Evatt@fd.org

Columbia, South Carolina
February 23, 2026